# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARRYL BURKE,<br><br>    *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>    *Defendant*. | Civil Action No. 16-1670 (RDM) |

## MEMORANDUM OPINION

Plaintiff Darryl Burke is currently serving a thirty-year prison term for bank fraud and conspiracy to commit bank and wire fraud. In 2015, he submitted three overlapping Freedom of Information Act/Privacy Act requests to the United States Secret Service, a component of the U.S. Department of Homeland Security. Although not entirely clear, those requests apparently sought—among other things—a signed real estate contract that was allegedly produced by Wells Fargo Bank in response to a grand jury subpoena; the alleged grand jury subpoena itself; certain handwritten notes; and the transcripts of the testimony of three witnesses who appeared at Burke's criminal trial.

In response, the Secret Service sent Burke a letter explaining that it had concluded that Burke's request sought third-party information and that, under the Service's governing regulations, it could provide the requested records only with the authorization of that third party. Unsatisfied, Burke filed the present action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel the Secret Service to release the requested records. This, in

turn, prompted the Secret Service to conduct a search for documents responsive to Burke's request.

After doing so, the Secret Service filed a motion for summary judgment, which is currently before the Court for decision. Dkt. 13. According to the Service, it was unable to locate many of the records Burke seeks, and the records that it was able to locate are subject to FOIA exceptions and thus need not be released. As to much of this, Burke does not push the point. He now asserts that he seeks the release of only two sets of records: First, he seeks "the signature page (No. 0149 P. 15)" of the "real estate contract between John H. Cobb and Claris[s]a Garvey." Dkt. 15 at 5. Second, he seeks "any notes about the [s]ignature page from S.S. Agent Nat Maloney." *Id.*

The Secret Service attests that it has repeatedly and diligently searched for these records and that they are not to be found. *See, e.g.*, Dkt. 13-3 at 2–3 (Falletich ¶¶ 8–12); Dkt. 20-1 at 3–4 (Swain Decl. ¶¶ 13–15); Dkt. 21-1 at 2 (Swain Supp. Decl. 4–7). As a result, the only question that remains for resolution is whether the Secret Service has met its burden of showing that it has "conducted a search reasonably calculated to uncover" the two remaining categories of records that Burke seeks. *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The Court concludes that the Service has met its burden and will, accordingly, grant the pending motion for summary judgment.

## I. BACKGROUND

Because Burke has clarified that he now seeks to compel the Secret Service to release only (1) the signature page of the real estate contract between John H. Cobb and Clarissa Garvey

2

and (2) any notes that Special Agent Maloney may have taken about that page, the Court will recount just that portion of the background relevant to those records.

On April 20, 2015, the Secret Service received two FOIA requests from Burke, one dated March 24, 2015, and the other dated April 2, 2015.[1]  *See* Dkt. 13-2 at 2 (Campbell Decl. ¶ 4); *id.* at 13, 15.  Approximately a week later, the Secret Service wrote to Burke, informing him that, because his requests sought records about a third party—Clarissa Garvey—the Service could "neither initiate a search for responsive documents nor confirm or deny the existence of investigatory information pertaining to the person named in [the] request" without "the required" authorization, including "a notarized release from . . . Garvey."  Dkt. 13-2 at 18.  The Service further explained that, if Burke did not respond "within thirty . . . days from the date of this letter," it would administratively close Burke's file.  *Id.*

Instead of providing that release, Burke submitted a third FOIA request, adding further detail to his earlier requests.  Dkt. 13-2 at 36, 39–41.  Of greatest relevance here, Burke states that he was "specifically ask[ing] for all page[s], includ[ing] [a] sign[ed] copy of [the] real[] estate contract between Clarissa Garvey and John Cobb," which was "subpoena[ed] from Wells Fargo" and "sen[t] by fax to S.S. Agent Maloney from Wells Fargo."[2]  *Id.* at 36.  Burke attached the "first page of the sale contract between Clarissa Garvey and John Cobb" to his request, *id*; *see also id.* at 40; highlighted the alleged Wells Fargo subpoena reference number for the

---

[1]  The Secret Service refers to Burke's second request as the "April 12" request, *see, e.g.*, Dkt. 13-1 at 1 (Def.'s SMF ¶ 1); Dkt. 13-2 at 2 (Campbell Decl. ¶ 4), but the request is actually dated April 2, 2015, *see* Dkt. 13-2 at 15 (hand-written notations showing "4/2/2015").

[2]  Burke's May 19, 2015, FOIA request also sought the "[t]rial [t]estimony" of "Agent Maloney," "Clarissa Garvey," and "John Cobb" from his "public trial."  Dkt. 13-2 at 36.  In his opposition brief, however, Burke "concede[d] that he d[id] not want the [Defendant] to supply him with" those transcripts.  Dkt. 15 at 5.

documents he was seeking, *see id.* at 36, 39, 41; and noted that he was requesting "public information" that had been "testif[ied] [to] by both part[ies] in [Burke's] public trial," *id.* at 36, 39. Because Burke's third request "did not include [the third-party] release[]" that he had been previously advised was required, however, the Secret Service's FOIA office "administratively closed [Burke's] file" without searching for any of the records he requested. Dkt. 13-2 at 4 (Campbell Decl. ¶¶ 15–16).

Burke initiated this action in August 2016. Dkt. 1. Although his complaint is not crystal clear, the parties agree that, at a minimum, it seeks the two categories of records now at issue—the signature page of the real estate contract and any notes Special Agent Maloney may have taken about that page. After receiving the complaint, the Secret Service initiated its first search for these (and other) records. *See* Dkt. 13-2 at 4–5 (Campbell Decl. ¶ 18). The Miami Field Office was identified as the "controlling field office for the investigation leading to [Burke's] criminal case," and Special Agent Eric Falletich was instructed to search for responsive records, including "a real estate contract between Clarissa Garvey and John Cobb." *Id.* at 5 (Campbell Decl. ¶ 21); *see also* Dkt. 13-3 at 1 (Falletich Decl. ¶¶ 1, 3–4). Falletich searched through the "[ten] banker boxes of documents associated with [Burke's] criminal investigation," "searched [his] computer hard drive" using the "search terms 'Clarissa Garvey,' 'John Cobb,' 'Garvey,' and 'Cobb,'" and searched the "Miami Field Office network drive" using the same four terms. Dkt. 13-3 at 2–3 (Falletich Decl. ¶¶ 8, 10). Falletich's search of his hard drive and the network drive failed to yield any responsive records. *Id.* at 3 (Falletich Decl. ¶ 10). His search of the banker boxes, however, uncovered seventy-four pages of potentially responsive records that "reflect[ed] that they were produced in response" to the Wells Fargo subpoena referenced in Burke's FOIA requests. Dkt. 13-2 at 5 (Campbell Decl. ¶ 22); *see also* Dkt. 13-3 at 2 (Falletich

4

Decl. ¶¶ 8–9).  The Secret Service did not release any of those seventy-four pages of records to Burke, asserting that they contained only non-segregable information subject to FOIA Exemptions 3 and 7(C).  *See* Dkt. 13 at 8–10.

Relying on the adequacy of Falletich's search and these FOIA exemptions, the Secret Service moved for summary judgment.  Dkt. 13 at 10.  In opposing that motion, Burke "ma[d]e clear" that "the signature page (No. 0149 P.15)" of the real estate contract "and any notes about the [s]ignature page from [Special] Agent . . . Maloney" are "the only documents" that he is seeking in this litigation.  Dkt. 15 at 5.  This clarification, in turn, prompted the Secret Service to "conduct[] an additional search for th[e] signature page and any notes by Maloney about that signature page."  Dkt. 20 at 1.  According to the declaration of Brian Swain, the Special Agent in Charge of the Secret Service's Miami Field Office, that search "consisted of (a) a review of the [ten] banker boxes of documents associated with the criminal investigation of [Burke], including a review of the documents associated with [the] Wells Fargo subpoena . . . , and (b) a search of all the electronic materials related to [Burke's] criminal investigation on the Miami Field Office network drive."  Dkt. 20-1 at 4 (Swain Decl. ¶ 14).  He further attested that "[a]ll files likely to contain responsive materials were searched."  *Id.*  This "second" search "did not yield the requested signature page or any notes about" it.  *Id.* (Swain Decl. ¶ 15).

On August 1, 2017, the Court ordered the Secret Service to provide additional information about its efforts to locate the requested records.  The Court observed that Burke had filed a supplemental opposition (Dkt. 16) that included "several pages of trial transcripts from his criminal trial" in which a "witness discusse[d] the signature page of th[e] real estate contact" that Burke was seeking, and in which "a lawyer [had] indicate[d] that the signature page" had been "entered into evidence as 'Government . . . Exhibit UU.'"  Minute Order (Aug. 1, 2017) (quoting

5

Dkt. 16 at 5–6). The Court noted that, although the Secret Service had already performed a supplemental search keyed to Burke's updated request, it had not indicated whether "it maintained copies of trial exhibits from [Burke's] criminal trial" or whether it had "searched those trial exhibits for the signature page" at issue. *Id.* Accordingly, the Court ordered that the Secret Service provide a supplemental declaration "informing the Court whether it . . . maintained a copy of the trial exhibits," and, if so, whether those exhibits had been searched for any records responsive to Burke's narrowed request. *Id.* The Secret Service responded to the Court's order on August 7, 2017, verifying that it had performed a search "specifically for copies of the trial exhibits from [Burke's] criminal trial;" that it did "not maintain a complete copy of the trial exhibits from [Burke's] criminal trial;" that, among the "few" trial exhibits it did maintain, it could not locate "the requested signature page;" and that a "third search" of the "banker boxes" and all "electronic materials related to [Burke's] criminal investigation" failed to "yield the requested signature page or any notes about that signature page." Dkt. 21-1 at 2 (Swain Supp. Decl. ¶¶ 4–7).

## II. LEGAL FRAMEWORK

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 268 (D.D.C. 2016). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a FOIA action, "the Court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe ' . . . the justifications for nondisclosure [of records] with reasonably specific detail . . . and are not controverted by either

contrary evidence in the record nor by evidence of agency bad faith.'" *Thomas v. FCC*, 534 F. Supp. 2d 144, 145 (D.D.C. 2008) (alterations in original) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its action. 5 U.S.C. § 552(a)(4)(B).

### III. ANALYSIS

The Secret Service asserts that, after three searches, it has failed to locate the specific records that Burke requests. The only question for the Court to resolve, then, is whether the Secret Service's searches for those records were adequate. The Court concludes that they were.

"An agency has an obligation under FOIA to conduct an adequate search for responsive records." *Ewell v. U.S. Dep't of Justice*, 153 F. Supp. 3d 294, 301 (D.D.C. 2016). The adequacy of an agency's FOIA search "is judged by a standard of reasonableness," *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), and "[a]n agency fulfills its obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents,'" *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). "In order to obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency can show that it conducted an adequate search by relying on "[a] reasonably detailed affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* Significantly, "the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods.'" *Hodge v. FBI*, 703 F.3d 575, 579 (D.C.

Cir. 2013) (alteration in original) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

The record provides ample evidence that the Secret Service performed an adequate search that was reasonably calculated to locate the signature page Burke requested and any notes Special Agent Maloney may have taken about that page. The Secret Service focused its search on the Miami Field Office because it was the "controlling field office for the investigation leading to [Burke's] criminal case." Dkt. 13-2 at 5 (Campbell Decl. ¶ 20). It tasked Eric Falletich with performing the search because he was "familiar with the documents in the case file." Dkt. 13-3 at 1 (Falletich Decl. ¶¶ 1–4). As Falletich avers in his declaration, the "documents associated with [Burke's] criminal investigation" were contained in "[ten] banker boxes" located in the Miami Field Office, and he "searched through th[o]se boxes for [the] documents" Burke requested without success. *Id.* at 2 (Falletich Decl. ¶ 8). He also "searched [his] computer hard drive" and the "Miami Field Office network drive" for any electronic documents that were responsive to terms like "Garvey" and "Cobb"—the signatories to the contract that Burke was seeking—but, again, failed to locate the specific documents at issue. *Id.* at 2–3 (Falletich Decl. ¶ 10).

Burke attacks the adequacy of this search by claiming that Falletich falsely attested that he was "the assigned case agent for the Secret Service case that ultimately led to" Burke's fraud conviction. Dkt. 15 at 6 (citing Dkt. 13-3 at 1 (Falletich Decl. ¶ 1)). According to Burke, this assertion calls into question the veracity of Falletich's declaration—and his assertion that he completed a thorough search—because Falletich was not even employed by the Secret Service at the time of Burke's trial. *Id.* That argument, however, fails to recognize the possibility that Falletich inherited responsibility for the matter after the trial was complete. That possibility,

moreover, is borne out by the declaration of Special Agent in Charge Swain, who attests that it is "protocol within the Miami Field Office" to reassign a departing agent's work to another agent and that, in fact, Special Agent Falletich is "currently assigned to [Burke's] criminal case." Dkt. 20-1 at 2–3 (Swain Decl. ¶¶ 8, 10–11). Accordingly, there is no reason to question the accuracy of Falletich's declaration.

As explained above, after Burke clarified the object of his request, the Secret Service performed a second search, once again "review[ing] . . . the [ten] banker boxes of documents" in an effort to locate the signature page, and, again, "search[ing] . . . all of the electronic materials related to [Burke's] criminal investigation on the Miami Field Office network drive." Dkt. 20-1 at 4 (Swain Decl. ¶¶ 14–15). Even with the more defined parameters Burke had provided, this search proved no more fruitful than the first. And after the Service conducted yet a third search—this time by searching for trial exhibits that may have contained the signature page in question—the Secret Service, yet again, did not find the records Burke seeks. The Secret Service further explained, moreover, that it had "not maintain[ed] a complete copy of the trial exhibits from [Burke's] criminal trial;" that, among the exhibits it *did* retain from the trial, a search "for any trial exhibit that include[d] [Burke's] requested signature page" came up empty; and that, for the third time, the "search did not yield the requested signature page or any notes about that signature page." Dkt. 21-1 at 2 (Swain Supp. Decl. ¶¶ 3–7).

To meet its burden at the summary judgment stage, the "agency may submit, and [the Court] may rely on, 'reasonably detailed affidavit[s], setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Aguiar v. Drug Enforcement Admin.*, 865 F.3d 730, 738 (D.C. Cir. 2017) (second alteration in original) (quoting *DiBacco v. U.S. Army*, 795 F.3d 178, 188

9

(D.C. Cir. 2015)). The declarations described above meet that standard. They describe where responsive records, if any, were likely to be found; they describe in detail the locations that were searched; they describe the electronic search terms; they explain that the Secret Service did not keep a complete set of the trial exhibits; and they demonstrate a level of diligence commensurate with the task. In short, the Secret Service's declarations describe the methodology employed to locate the records that Burke requested, explain who conducted the search and why, and note that "[a]ll files likely to contain responsive materials were searched." Dkt. 13-3 at 3 (Falletich Decl. ¶ 12). Even though the Secret Service's search efforts did not bear the "fruit[]" that Burke was hoping to obtain, the "appropriateness of [its] methods" cannot be faulted for that failure. *Iturralde*, 315 F.3d at 315.

Burke's efforts to resist this conclusion fail. First, even if Burke is correct that the signature page was discussed in "open court" such that the "public domain exception" would apply, *see* Dkt. 16 at 2 (citing *Davis v. U.S. Dep't of Justice*, 968 F.2d 1279, 1279–80 (D.C. Cir. 1992)), that exception is of no moment where the agency cannot locate the document that was previously discussed in "open court." Second, his focus on the Secret Service's repeated invocations of a "Protective Order," while understandable, is misplaced. *See* Dkt. 23 at 1–2. Although the Secret Service's declarants make frequent reference to an order "issued by the United States District Court for the Southern District of Florida" that, they assert, "precludes the disclosure of the sensitive information contained in any of the discovery documents associated with [Burke's] underlying criminal case," *see, e.g.*, Dkt. 13-2 at 6 (Campbell Decl. ¶¶ 25–27), the Service does not ultimately rely on that protective order in seeking summary judgment. With or without a protective order, the Secret Service cannot release records it does not have.

Similarly, there is no basis for the Court to conclude—as Burke seems to contend—that there exists a separate cache of potentially responsive documents that are "covered by the Government's Protective Order" and that the Secret Service has yet to search. Dkt. 23 at 2. The Secret Service's representations, made under the penalty of perjury, regarding its efforts to locate the requested records are entitled to a presumption of good faith, *see Clemente v. FBI*, No. 16-5067, --- F.3d ---, 2017 WL 3443034, at *3 (D.C. Cir. Aug. 11, 2017)), and the Service Service's witnesses have attested without qualification that they searched "[a]ll files likely to contain responsive materials," *see, e.g.*, Dkt. 13-3 at 3 (Falletich Decl. ¶ 12). Burke's bare assertion that there must be some other set of "documents" containing the signature page is not enough to cast doubt on the these representations. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search."). More fundamentally, Burke appears to misunderstand the nature of a protective order. A protective order does not create a new class of documents that are necessarily filed and maintained separately from other documents, but rather governs how covered documents may be used and to whom they may be disclosed.

Finally, Burke requests that the Court either require additional detail from the Secret Service or conduct an *in camera* inspection regarding one issue. Dkt. 22. In particular, he points to the Secret Service's assertion that "[a]lthough [it] has the page that [Burke] asserts or appears to assert is the signature page to the specified contract, *see* [Dkt. 15 at 5], that page is not the signature page to the specified contract." Dkt. 20-1 at 4 (Swain Decl. ¶ 16). Far from injecting uncertainty, however, that assertion is readily explained by reference to Burke's own filings. In narrowing the scope of his request in his opposition brief, Burke stated that he seeks "the

signature page (No. 0149 P.15)." Dkt. 15 at 5. He then attaches the portions of the contract that he does have to his supplemental brief in opposition. Dkt. 16 at 8–10. The final page of that document bears the notation "No. 0149 P. 14," *id.* at 10, presumably prompting Burke to ask for the next page—"No. 0149 P. 15"—which he assumes is the signature page. But, page "No. 0149 P. 14" notes at the bottom that it is "Page 3 of 5," *id.*, making clear that two pages follow. Understood in this light, the fact that the Secret Service acknowledges that it possesses a copy of page "No. 0149 P.15" is not at all inconsistent with the Service's further assertion that it does not possess the signature page. Because Burke has made clear that it is the signature page that he seeks, and because the Secret Service has provided multiple declarations under the penalty of perjury attesting that it does not have that page, the Court concludes that there is no need for further explanation or for an *in camera* inspection of page "No. 1049 P.15"—that is, the second-to-last page of the contract.

As the D.C. Circuit has explained, "[an] agency is not obligated, nor is it able, to disclose a record it does not have." *Burke v. U.S. Dep't of Homeland Sec.*, No. 16-cv-1595, --- F. Supp. 3d ---, 2017 WL 3405512, at *6 (D.D.C. Aug. 8, 2017) (alteration in original) (quoting *DeBrew v. Atwood*, 792 F.3d 118, 123 (D.C. Cir. 2015)). Here, the Secret Service conducted three diligent searches for the records that Burke requested and could not locate them. That is all the law requires.

## CONCLUSION

The Court will, accordingly, **GRANT** the Secret Service's motion for summary judgment, Dkt. 13, and will **DENY** Burke's motion for *in camera* review, Dkt. 22. The Court will **DENY** the Secret Service's motion for an extension of time to respond to Burke's motion for *in camera* review, Dkt. 24, as moot.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 8, 2017